1  **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony D'Acquisto,<br><br>    Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of Social Security,<br><br>    Defendant. | No. CV 10-01938-PHX-EHC<br><br>**ORDER** |

This is an action for judicial review of a denial of disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g). The matter is fully briefed (Doc. 12 & 16).

Plaintiff applied for disability benefits on April 11, 2008 at approximately 52 years of age (Administrative Record [Tr.]) 75-77, 191). Plaintiff alleged a disability onset date of August 25, 2006 (Tr. 75). Plaintiff is insured for benefits through December 31, 2006 (Tr. 9).

Plaintiff's claim was denied initially (Tr. 47-50) and upon reconsideration (Tr. 55-57). Plaintiff requested a hearing (Tr. 58-59). After a hearing on December 22, 2009 (Tr. 15-44), the Administrative Law Judge ("ALJ") issued a decision on April 23, 2010 finding that Plaintiff was not disabled (Tr. 9-14). The ALJ listed Plaintiff's severe impairments as lumbar musculoligamentous strain, degenerative disc disease and reflex sympathetic dystrophy

("RSD")[1] (Tr. 11). The Appeals Council denied Plaintiff's request for review (Tr. 1-4) which was a final decision.

**I.**

Standard of Review

A person is "disabled" for purposes of receiving social security benefits if he or she is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). Social Security disability cases are evaluated using a five-step sequential evaluation process to determine whether the claimant is disabled. The claimant has the burden of demonstrating the first four steps. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

In the first step, the ALJ must determine whether the claimant currently is engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. The second step requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments which significantly limits the claimant's ability to do basic work activities; if not, a finding of "not disabled" is made and the claim is denied. At the third step, the ALJ determines whether the impairment or combination of impairments meets or equals an impairment listed in the regulations; if so, disability is conclusively presumed and benefits are awarded. If the impairment or impairments do not meet or equal a listed impairment, the ALJ will make a finding regarding the claimant's "residual functional capacity" based on all the relevant medical and other evidence in the record. A claimant's residual functional capacity ("RFC") is what he or she can still do despite existing physical,

---

[1]"Reflex Sympathetic Dystrophy ("RSD"), also known as Complex Regional Pain Syndrome (CRPS), is a chronic pain condition characterized as continuous intense pain out of proportion to the severity of the injury that gets worse rather than better over the passage of time." Liggett v. Astrue, 2011 WL 2940347 *1 n.3 (C.D. Cal. 2011).

mental, nonexertional and other limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work"; if so, the claimant is not disabled and the claim is denied. The Commissioner bears the burden as to the fifth and final step of establishing that the claimant can perform other substantial gainful work. Tackett, 180 F.3d at 1099.

The Court has the "power to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for rehearing." 42 U.S.C. § 405(g). The decision to deny benefits should be upheld unless it is based on legal error or is not supported by substantial evidence. Ryan v. Commissioner of Social Security, 528 F.3d 1194, 1198 (9th Cir. 2008). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971). The Court must consider the record in its entirety and weigh both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.1985).

## II.

### Background Facts

Plaintiff claimed disability based on disc problems, reflex sympathetic dystrophy ("RSD"), and lumbar issues (Tr. 103). Plaintiff has a ninth grade education and his past relevant work included a position in customer service for a home builder, a fisherman, and a heavy equipment mechanic (Tr. 19, 110). Plaintiff claims he was injured in his lower back in August 2006 and has not worked since that time. Plaintiff received disability for one year under the California worker's compensation program, has received food stamps, and has received coverage under Arizona's Medicaid program (Tr. 22, 24).

Plaintiff injured his right hand while working in 1997 (Tr. 323). Between 2002 and 2006, Plaintiff was treated by John Qian, M.D., for pain stemming from that hand injury (Tr. 270-358). Dr. Qian diagnosed Plaintiff with RSD in his right arm. In July 2003, Dr. Qian

opined in a California worker's compensation report that Plaintiff should avoid using his right hand and arm for heavy lifting, pushing, pulling, holding, and power gripping, and he should not lift more than 5 pounds frequently (Tr. 322-328).

Plaintiff sustained injury in August 2006 when he turned while working and heard a "pop" in his lower back (Tr. 21-22). On August 30, 2006, Dr. Qian treated Plaintiff for hand pain and the work-related back injury (Tr. 269). Thereafter, until April 2009, Plaintiff was treated by Dr. Qian for complaints of hand and arm pain associated with RSD and occasional back pain (Tr. 241-244, 245-268). Dr. Qian prescribed Methadone, Xanax and Norco which seemed to be effective in managing Plaintiff's pain (Tr. 241-268).

*Plaintiff's Treatment for Back Strain by Dr. Ellis - 2006-2007*

In late October 2006, Plaintiff was seen by John Ellis, M.D., for treatment to his back following the August 2006 injury (Tr. 206-210). Dr. Ellis's examination of Plaintiff's lumbar spine revealed no swelling, ecchymosis, contusion, or sign of recent trauma. Plaintiff had moderately limited range of motion, his lower extremity strength was full (5/5) and his straight leg raise tests were normal (Tr. 208-209). Dr. Ellis diagnosed Plaintiff with back strain and recommended non-surgical treatment, including nonsteroidal anti-inflammatory medications and a physiotherapy program to increase his strength (Tr. 209-210). He reported that Plaintiff could work at modified duties as long as they did not involve lifting over 10 pounds or repeated bending or stooping and did not anticipate that Plaintiff's back injury would require surgery or result in permanent disability (Tr. 210).

In December 2006, Dr. Ellis treated Plaintiff for his complaint of low back pain. Dr. Ellis noted that Plaintiff had poor lumbar range of motion, intact deep tendon reflexes, and negative straight leg raise tests (Tr. 204-205). He recommended nonsteroidal anti-inflammatory medication and an MRI of Plaintiff's lumbar spine (Tr. 205). A January 2007 MRI of Plaintiff's lumbar spine showed minimal disc bulging, mild degenerative changes, and some spinal arthritis (spondylosis) (Tr. 201-201, 203). Following the MRI, Dr. Ellis reported

that Plaintiff's work status still required no lifting over 10 pounds and no repeated bending or stooping (Tr. 202, 200).

In March 2007, Dr. Ellis examined Plaintiff and opined that Plaintiff had permanent work restrictions that included no lifting over 25 pounds, no repetitive bending or stooping, no ladder or scaffold work, but that Plaintiff was "capable of working in his preinjured capacity and competing in the open job market without restrictions" (Tr. 194-195). Dr. Ellis's May 2007 examination revealed similar results except there was negative straight leg raise tests bilaterally (Tr. 189-190). In June 2007, Dr. Ellis noted minimally positive left straight leg raise and slight loss of range of motion of the lumbar spine but that Plaintiff's permanent work conditions remained unchanged (Tr. 187-188).

*Non-Examining Reviewing Reports - 2008*

In June 2008, Heather Barrons, Psy.D., a state agency psychologist, completed a Psychiatric Review Technique Form and reported there was insufficient medical evidence that Plaintiff had any mental impairment (Tr. 218-231).

In June 2008, James Hopkins, M.D., a state agency physician, reviewed Plaintiff's medical records and opined that Plaintiff could occasionally lift 20 pounds; frequently lift 10 pounds; sit, stand and/or walk 6 hours in an 8-hour day; push/pull with no restrictions; and frequently climb, balance, stoop, kneel and crouch (Tr. 232-239).

In October 2008, Ernest Griffith, M.D., a state agency physician, reviewed Plaintiff's medical records and reported agreement with Dr. Hopkins's assessment (Tr. 240).

*Dr. Qian's Work-Related Assessments*

In December 2008, Dr. Qian completed an Arizona General Assistance Form and opined that Plaintiff had a "physical or mental incapacity" that prevented him from performing any substantial gainful employment which was expected to last 12 or more months. Dr. Qian did not specify the nature of the "physical or mental incapacity" (Tr. 243).

In January 2010, Dr. Qian completed a medical assessment of Plaintiff's ability to do work related activities based on Plaintiff's condition as of 2006 (Tr. 380-382). Dr. Qian

reported that Plaintiff suffered from low back pain and RSD in his right hand that had worsened with his back injury (Tr. 382). Dr. Qian opined that Plaintiff could sit for one hour at a time; stand and/or walk for 30 minutes at a time and 3 hours in an 8-hour work day; sit for 6 hours in an 8-hour work day; frequently lift up to 5 pounds; occasionally lift and carry up to 20 pounds; grasp, push and pull with his right hand but no fine manipulation or continuous combination; grasp, push, pull and do fine manipulation with his left hand; use both feet for repetitive movements; occasionally bend, squat, crawl, climb and reach; no restrictions on unprotected heights; mild restrictions on machinery, driving, exposure to environmental hazards; and moderate restrictions on exposure to marked changes in temperature or humidity (Tr. 380-382).

*Medical Records - 2009*

Between May and September 2009, Plaintiff was seen by Jack Hawks, D.O., three times (Tr. 359-362, 363-367, 368-376). Dr. Hawks diagnosed Plaintiff with RSD, cervical and lumbar spine degenerative joint disease, and osteoarthritis in multiple areas (Tr. 361, 366, 370). Dr. Hawks instructed Plaintiff to continue taking his usual medications and to do home range of motion and strengthening exercises (Tr. 370).

*Work-Related Assessment - 2009*

In November 2009, Lewis Wright, M.D., completed a "Medical Assessment of Ability To Do Work Related Activities" (Tr. 377). Dr. Wright reported that Plaintiff could sit, stand and walk 15 minutes at a time for a total of 3 hours in an 8-hour work day; occasionally carry up to 5 pounds and lift up to 10 pounds; occasionally bend, crawl and reach; use his left hand but not his right hand for continuous actions; use his feet for repetitive motions on his right side only; should avoid unprotected heights and machinery; had mild restrictions to exposure to marked changes in temperature and humidity; and had no restrictions on driving or exposure to dust, fumes and gases (Tr. 377-379). Dr. Wright opined that Plaintiff was additionally limited by pain that had a "severe" effect on his ability to function (Tr. 379).

//

- 6 -

*Medical Records - 2010*

A February 2010 MRI of Plaintiff's lumbar spine showed some degenerative joint disease but otherwise was "essentially negative MRI of the lumbar spine." There was "[n]o significant central spinal stenosis" (Tr. 383-384).

*Function Reports - 2008*

Plaintiff completed a Function Report in May 2008 (Tr. 120-125). Plaintiff said he took care of his dog, prepared microwave meals, did light laundry about 2 hours at a time once a month, walked around the backyard 15 times a day, grocery shopped, and fished (Tr. 121-124). Plaintiff estimated he could lift 20 pounds and walk around the block (Tr. 125). Plaintiff is left-handed (Tr. 125). Plaintiff's friend and roommate also completed a Function Report dated May 2008 (Tr. 128-135).

## III.

### The Hearing Before the ALJ - December 22, 2009

Plaintiff, represented by counsel, and Mark Kelman, a Vocational Expert (VE), testified at the hearing (Tr. 15-44).

Plaintiff testified that he has RSD in his right arm and hand as of well before 2006 (Tr. 21, 33-34). Plaintiff said that the "only thing" he does with his left hand is write his name and that he works with his right hand (Tr. 21). Plaintiff said he could do "very little" with his right hand, including that he could only grip or grasp "a little bit once in a while," could not lift any appreciable weight, and frequently dropped things (Tr. 34-35). He testified he "do[es] everything with my left hand as much as I can." (Tr. 34). Plaintiff said he injured his lower back while working in August 2006 and this injury caused his RSD to worsen and his body "fell apart" (Tr. 21, 34). Since his back injury, Plaintiff has experienced "[c]onstant" and "[m]oderate severe to severe" pain in his lower back and in his right arm (Tr. 28-29). Plaintiff said that since 2006 his medications have included Xanax, Norco, Neurontin, and Methadone which give him relief to a certain point (Tr. 25, 28). He also uses a TENS unit, ice, and cold compresses to help with his pain (Tr. 29).

- 7 -

Plaintiff testified that he lives with a roommate (Tr. 20-21). Plaintiff said he drives occasionally and can ride in a car for hours at a time if he can lower the seat and lie back (Tr. 26-27). Plaintiff testified that he has trouble dressing and bathing and can sleep for "fifteen or twenty minutes" at a time (Tr. 27-28). Activities such as cooking make his pain worse (Tr. 29). Plaintiff said he lies down most of the day and needs to change positions frequently to stay comfortable (Tr. 30). Plaintiff said he can sit for about 15 minutes at a time and cannot sit or stand for more than 3 hours in an 8-hour period (Tr. 30-32).

Plaintiff described his customer service job as concerning repairing "minuscule things" such as fixing an electrical socket or arranging for contractors to fix something (Tr. 37-38). Plaintiff said he was able to perform this job for many years despite his RSD (Tr. 33-34).

The VE testified that Plaintiff's past work as a customer services representative for a home builder was light, semiskilled (Tr. 38-39). The ALJ first questioned the VE regarding a person of Plaintiff's age and education who can not lift more than 25 pounds; no repetitive bending or stooping; and no ladders or scaffold work. The VE testified that such a person could perform Plaintiff's past customer service job (Tr. 39). The ALJ added the limitation of not lifting more than 10 pounds (Tr. 43). The VE testified that such a person could not perform Plaintiff's past relevant work, but could work in the national economy as a parking lot cashier, a gate guard, an usher, or as a lobby attendant (Tr. 43).

The ALJ next questioned the VE regarding a person of Plaintiff's age and education who can frequently lift 10 pounds; occasionally lift 20 pounds; stand, walk and sit for 6 hours each in an 8-hour work day; perform unlimited pulling or pushing; and with limitations in climbing and crawling. The VE testified that such a person could perform Plaintiff's past customer service job (Tr. 39-40).

Plaintiff's counsel questioned the VE about a person who could not use his right arm except to aid his left arm, or who could not use his right arm to do any simple grasping, pushing, pulling, fine manipulation or a continuous combination of these. The VE testified that such a person could not perform any of Plaintiff's past relevant work (Tr. 40-41).

Plaintiff's counsel questioned the VE regarding a person who could only sit and stand for 3 hours total in an 8-hour day. The VE testified that the person would not be able to maintain full-time employment (Tr. 42).

**IV.**

The ALJ's Findings

In a written decision dated April 23, 2010 (Tr. 9-14), the ALJ found that Plaintiff had not engaged in substantial gainful activity from his onset date of August 25, 2006 through December 31, 2006, his date of last insured (Tr. 11). The ALJ found that Plaintiff's conditions of lumbar musculoligamentous strain, degenerative disc disease and reflex sympathetic dystrophy (RSD) were severe impairments which have caused more than minimal work-related functional limitations but that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listing in the regulations (Tr. 11-12). Plaintiff's medically determinable impairment of headaches was found not to cause more than minimal limitations in Plaintiff's ability to work (Tr. 11). Plaintiff's alleged anxiety was determined not to be a medically determinable impairment (Tr. 11).

The ALJ found that Plaintiff has the residual functional capacity to perform a full range of light work in that he can lift and carry 20 pounds occasionally and 10 pounds frequently and can sit, stand and walk 6 hours in an 8-hour workday, with some limitations with climbing and crawling (Tr. 12). In making this decision, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms but that Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not credible to the extent they were inconsistent with the RFC finding and based on the overall evidence (Tr. 12).

The ALJ noted that Plaintiff testified that he is unable to work due to his injuries and is unable to sit or stand for more than 3 hours in an 8-hour work day (Tr. 12). The ALJ found that Plaintiff's impairments are not as severe as alleged based on the examination findings of Dr. Ellis, Plaintiff's treating physician (Tr. 13). Plaintiff's RSD was not as severe as alleged

1  based on examination notes in 2007 showing that Plaintiff had not had any problems with his
2  upper extremities (Tr. 13). The ALJ gave substantial weight to the opinion of Dr. Hopkins,
3  a State Agency consultant, regarding Plaintiff's residual functional capacity, finding it was
4  consistent with Dr. Ellis's opinion (Tr. 13). The ALJ gave little weight to the opinions of Drs.
5  Wright and Qian as inconsistent with the medical evidence, Plaintiff's activities of daily
6  living, and the opinions of Drs. Hopkins and Ellis (Tr. 13). Plaintiff's description of his daily
7  activities further showed he is not limited to the extent one would expect given the complaints
8  of disabling symptoms and limitations (Tr. 13). The ALJ also gave little probative weight to
9  the statements of Plaintiff's friend (Tr. 14).

The ALJ found that Plaintiff is capable of performing his past relevant work in customer service (Tr. 14). The ALJ noted that the VE had testified that, given Plaintiff's limitations, Plaintiff could perform this job (Tr. 14). The ALJ determined that Plaintiff is not under disability (Tr. 14).

**V.**

Discussion

Plaintiff argues that the ALJ improperly weighed medical source evidence, erred by misinterpreting the evidence to Plaintiff's detriment and erred in implicitly rejecting Plaintiff's credibility. Defendant argues that substantial evidence supports the ALJ's decision that Plaintiff is not disabled.

Plaintiff's first two claims of error appear related. Plaintiff contends that he has had RSD in his upper right extremity for many years and that the ALJ erred in giving substantial weight to the opinion of Dr. Ellis who treated Plaintiff for a low back problem only. Plaintiff similarly argues that the ALJ erred in giving substantial weight to the opinion of the State Agency medical consultant, inferentially Dr. Hopkins, who only evaluated Plaintiff regarding his lumbar spine and had no medical records concerning Plaintiff's RSD at the time because the records were not submitted until December 2009. Plaintiff contends that the ALJ should have afforded more weight to the opinions of Dr. Qian and Dr. Wright. Dr. Qian treated

1  Plaintiff for RSD and completed a form setting forth Plaintiff's limitations indicating that
2  Plaintiff was unable to work. Dr. Wright completed a work-related form that reported
3  substantial restrictions on Plaintiff's use of his right upper extremity. After noting that the
4  ALJ's decision appears to have focused exclusively on Plaintiff's lower back injury, Plaintiff
5  states that he does not dispute the decision of no disability as it relates to the lower back
6  residual functional capacity (Doc. 12 at 8).

7  Generally, a treating physician's opinion is afforded more weight than the opinion of
8  an examining physician, and an examining physician's opinion is afforded more weight than
9  a non-examining reviewing or consulting physician's opinion. Holohan v. Massanari, 246
10 F.3d 1195, 1202 (9th Cir. 2001). Where a treating doctor's opinion is uncontradicted, an ALJ
11 may reject it only for "clear and convincing" reasons; however, a contradicted opinion of a
12 treating or examining physician may be rejected for "specific and legitimate" reasons. See
13 Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).

14 The ALJ did not err in giving substantial weight to the opinion of Dr. Ellis over the
15 opinions of Drs. Qian and Wright. Dr. Ellis treated Plaintiff for back injury from October
16 2006 through June 2007 (Tr. 187-210). Plaintiff appears to contend that he had worsening
17 right hand RSD with that back injury (Doc. 12 at 2 & 4). Dr. Ellis's examination and office
18 visit notes do not show that Plaintiff complained about severe pain in his right arm. In March
19 2007, Dr. Ellis opined that Plaintiff was "capable of working in his preinjured capacity" with
20 some limited physical restrictions (Tr. 195). Dr. Qian's assessment in 2003 that Plaintiff could
21 lift only 5 pounds with his right hand predated Plaintiff's August 2006 onset date and was of
22 limited relevance (Tr. 327). Carmickle v. Commissioner of Social Security, 533 F.3d 1155,
23 1165 (9th Cir. 2008) (medical opinion that predated alleged onset date is of limited
24 relevance). Dr. Qian's opinion set forth in a form completed in December 2008 did not
25 specify the nature of the "physical or mental incapacity" that prevented Plaintiff from
26 performing work activity (Tr. 243). The work-related assessment Dr. Qian completed in
27 *January 2010* regarding Plaintiff's ability to work in *2006* indicating Plaintiff was capable of
28

some work activity, such as sitting for 6 hours in an eight-hour workday and standing or walking for 3 hours in an eight-hour workday (Tr. 380-382), conflicted with Dr. Qian's December 2008 assessment that Plaintiff was unable to work. Dr. Qian's treatment notes between November 2006 and October 2007 include notations that Plaintiff's pain was managed with medication and that he was functioning well (Tr. 253, 255, 257-258, 261, 263-266).

With respect to the opinion of Dr. Wright, while Plaintiff appears to characterize Dr. Wright as a "treating physician" (see Doc. 12 (Plaintiff's Brief) at 3, 4-6 & 8), the record contains only the work-related assessment form Dr. Wright completed regarding Plaintiff (Tr. 377-379). The record does not contain medical records that substantiate Dr. Wright's assessment or that indicate that Dr. Wright was Plaintiff's treating physician. The ALJ need not accept the opinion of any physician if that opinion is not supported by clinical findings. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).

Dr. Ellis's treatment records regarding Plaintiff and Dr. Ellis's March 2007 opinion that Plaintiff was "capable of working in his preinjured capacity"(Tr. 191-197), are consistent with Dr. Hopkins's June 2008 report opining that Plaintiff had the residual functional capacity for work related activity (Tr. 232-239). Even if Dr. Hopkins's June 2008 opinion did not take into account Dr. Qian's treatment records submitted in December 2009 regarding Plaintiff's RSD, the error is harmless. The ALJ included RSD among Plaintiff's severe impairments (Tr. 11). The ALJ considered Dr. Qian's opinion and Plaintiff's RSD condition in conjunction with the overall medical evidence in reaching the residual functional capacity determination regarding Plaintiff's ability for work-related activity (Tr. 13).

With respect to the ALJ's findings regarding the credibility of Plaintiff's statements about his pain and symptoms, unless there is affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998)(citation omitted). The ALJ determined that Plaintiff's pain and symptom evidence was not supported by the medical records or Plaintiff's

account of his daily activities. The ALJ made no finding of malingering. The ALJ's reliance on Plaintiff's description of his daily activities, which include riding in a car, shopping, taking care of his dog, doing laundry, etc., appears somewhat questionable. The mere fact that a claimant engages in normal daily activities does not in any way detract from his credibility as to his overall disability. "One does not need to be 'utterly incapacitated' in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001). Nonetheless, the ALJ's reliance on the overall objective medical evidence, including the medical records that have been discussed, supports the ALJ's assessment of Plaintiff's pain and symptom complaints. Moreover, Plaintiff testified at the hearing that he was able to perform the customer service job for many years despite his RSD (Tr. 33-34).

The ALJ did not improperly weigh the medical source evidence or misinterpret the medical evidence related to Plaintiff's RSD condition. The ALJ did not err in assessing Plaintiff's pain and symptom complaints. The Commissioner's final decision is based on substantial evidence and free of legal error.

Accordingly,

**IT IS ORDERED** that the decision of the Commissioner denying Plaintiff's claim for benefits is affirmed.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter Judgment accordingly.

DATED this 29th day of September, 2011.

*Earl H. Carroll*
Earl H. Carroll
United States District Judge